UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEVIN RUDDOCK,
      Petitioner,

v.

CHAD WOLF, Acting Secretary of the
Department of Homeland Security,
JAMES MCHENRY, Director of the
Executive Office of Immigration Review,
THOMAS FEELEY, Director, Buffalo
Federal Detention Facility, UNITED
STATES DEPARTMENT OF
HOMELAND SECURITY,

      Respondents.

20-CV-1040 (JLS)

---

## DECISION AND ORDER

Petitioner Kevin Ruddock is in immigration detention at the Buffalo Federal Detention Facility ("BFDF"). He applied for an emergency writ of habeas corpus pursuant to 28 U.S.C. § 2241, for which he seeks declaratory judgment and immediate release from detention or, in the alternative, an immediate bond hearing before an immigration judge. Dkt. 1. Ruddock also seeks a temporary restraining order and a preliminary injunction restraining Respondents from: (1) "subjecting [him] to [an] environment or condition that constitutes exposure to the spreading of . . . coronavirus"; (2) "continuing the denial of access to serious dental treatments"; and (3) "continuing the denial of access to serious medical treatments including but not limited to access to a doctor and adequate treatment including but not limited to

[his] pneumonia and acute respiratory disease issues." Dkt. 2, at 1-2.[1] In particular, Ruddock alleges that this denial of medical and dental care and exposure to COVID-19 violate his Fifth, Eighth, and Fourteenth Amendment rights. *See id.* at 2; *see generally* Dkt. 1 at 14-22.

For the reasons below, the Court denies Ruddock's request for injunctive relief. The Court will decide the balance of his petition separately.[2]

## BACKGROUND

Ruddock submitted his petition and request for preliminary injunctive relief on July 23, 2020. Dkt. 1, at 23; Dkt. 2, at 3. Because he did not enclose the filing fee or submit a complete *in forma pauperis* application, the Court denied his claims without prejudice and ordered administrative termination of the case on August 12, 2020. Dkt. 4. The Court received Ruddock's $5.00 filing fee on August 24, 2020, and reopened the case. Dkt. 6.

On August 26, 2020, the Court issued a scheduling order, directing expedited briefing on Ruddock's request for preliminary injunctive relief based on exposure to COVID-19, denial of medical care, and denial of dental care. Dkt. 7. Respondents

---

[1] Unless otherwise noted, page references are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

[2] Because this decision addresses only Ruddock's COVID-19- and dental care-related claims, the Court does not discuss details or facts related to his prolonged detention claims. *See* Dkt. 7 (order providing for separate briefing schedules on Ruddock's claims for injunctive relief and those in the underlying petition).

2

opposed Ruddock's motion on September 2 and 3, 2020. Dkts. 9, 10. Ruddock submitted a reply on September 14, 2020. Dkt. 12.

Ruddock alleges that Respondents have "consistently shown deliberate indifference to the risk of contracting COVID-19" and have "exercised little or no measures to prevent the spreading of . . . COVID-19." Dkt. 1, at 20. For example, he alleges that "Respondents have not taken the enforcement of the use of masks and social distancing serious[ly,] exposing everyone to the risk of contracting the COVID-19 infection." *Id.* He also claims that Respondents "continue[] to encourage group sport activities" and "(group) playing of cards, dominos and so . . . forth," and "have not prohibited . . . hugging or handshaking" or "failing to wear mask[s] outside . . . cells/cubicles." Dkt. 12, at 8 ¶¶ 7-8, 9 ¶ 15. And he claims that Respondents provide insufficient access to soap, sanitizer, masks, gloves, and other hygiene and protective items, do not clean the facility frequently enough, and force detainees to share space and materials. *Id.* at 9-10 ¶¶ 18-23.

In addition, Ruddock alleges that Respondents have shown "deliberate indifference towards [his] safety and prevention from contracting [the] COVID-19 infection despite [their] knowledge that [he] has . . . serious pneumonia and acute respiratory disease." Dkt. 1, at 18. He submitted medical records documenting medical appointments on April 26, 28, and 30, 2020, which confirm that he was diagnosed with COVID-19. *See id.* at 25-31; *see also* Dkt. 10-1 ¶ 36. Ruddock's oxygen saturation at the three appointments was 98%, 99%, and 96%, respectively. *See* Dkt. 1 at 25, 27, 31. His April 27, 2020 chest x-ray indicated "some subtle right

3

perihilar haziness as with early pneumonitis," and he noted mild shortness of breath while at rest. *See id.* at 25, 31. According to Respondents, this chest x-ray "most likely is related to his COVID-19 infection." Dkt. 10-1 ¶ 37.

When he was diagnosed, Ruddock was "educated to notify [his] unit officer or duty nurse if experiencing [shortness of breath or] deep breathing," or if he developed a fever. *Id.* at 28. He learned techniques, such as deep-breathing exercises, hydration, and warm showers, to minimize his symptoms. *Id.* He was educated on "social distancing as able, avoid[ing] people who are sick, wash[ing] hand[s] frequently, avoid[ing] touching [his] face, . . . [and] avoid[ing] sharing dishes or other personal items with others." *Id.* And he was told to "remain in [the] COVID19 isolation unit." *Id.*

Ruddock was released from the isolation unit on May 1, 2020. Dkt. 10-1 ¶ 38. Between then and July 22, 2020, Ruddock did not report COVID-19 symptoms or complaints. *Id.* ¶ 38. On July 22, 2020, he "presented to sick call with complaints of [a] cough," and the medical provider determined that "his symptoms did not require re-testing for COVID-19 . . . , especially given his prior positive test." *Id.* ¶ 40; *see also* Dkt. 12, at 8 ¶ 13, 10 ¶ 27. According to Respondents, Ruddock "[p]resently . . . does not have any medical complaints relating to COVID-19 and . . . is in overall good health." Dkt. 10-1 ¶ 47. Ruddock claims that he is "still coughing blood on [a] daily basis," and that Respondents do not care about his health, but does not claim that he sought medical attention for his cough since July 22, 2020—

4

despite multiple interventions for dental pain in late July and August 2020. *See* Dkt. 12, at 8 ¶ 13, 10 ¶ 27; *see also id.* at 10 ¶ 29; Dkt. 10-1 ¶¶ 41-45.

Between July 30 and August 19, 2020, Ruddock was seen five times for complaints of dental pain. Dkt. 10-1 ¶¶41-45; *see also* Dkt. 12, at 10 ¶¶ 29-30. Respondents identified a cavity on Ruddock's tooth and recommended extraction. Dkt. 10-1 ¶¶ 42-43. Each time, Ruddock refused extraction; instead, he asked dental providers to "'kill the nerve' of his tooth" or perform a root canal. *See id.* ¶¶42-45; Dkt. 12, at 10 ¶¶ 29-30. Respondents state that dental providers informed Ruddock that "extraction was the best remedy." Dkt. 10-1 ¶ 45. Ruddock states that a dentist "told [him] that [a] root canal can be done to resolve [his] dental pain but that due to the facility's (economic) policy, extraction is the only choice." Dkt. 12, at 10 ¶ 29. He continues to experience dental pain because he does not consent to the treatment Respondents recommend. *See* Dkt. 10-1 ¶ 47; Dkt. 12, at 10 ¶ 28.

## DISCUSSION

Ruddock argues that his continued detention at the BFDF violates his Fifth and Fourteenth Amendment rights because Respondents are deliberately indifferent to his safety in light of COVID-19, his COVID-19-related medical needs, and his dental needs—and that the conditions of his confinement therefore amount to cruel and unusual punishment. *See* Dkt. 1, at 18-22. Respondents argue that Ruddock's COVID-19 exposure claim fails because they have taken numerous steps to prevent Ruddock's and others' exposure to COVID-19 within the facility. *See* Dkt. 9. They also argue that Ruddock did not demonstrate he is a "vulnerable

individual" at increased risk due to the virus under *Jones v. Wolf*, 20-cv-361, 2020 WL 1643857 (W.D.N.Y. Apr. 2, 2020). *See id.* And they argue that Ruddock has received sufficient medical and dental care. *See id.* As a result, Respondents argue that Ruddock did not demonstrate irreparable harm or a likelihood of success on the merits and is not entitled to injunctive relief. *See id.* at 4.

I.  **LEGAL STANDARDS**

   A.  **Preliminary Injunction**

To obtain a preliminary injunction, the moving party must establish: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) that the public interest is served by an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The same standard applies to motions for temporary restraining orders. *See, e.g., Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 484 (W.D.N.Y. 2018) (collecting cases).

   B.  **Deliberate Indifference**

The Eighth Amendment's cruel-and-unusual-punishment prohibition protects against deliberate indifference incarcerated individuals' medical needs. *Coronel v. Decker*, 449 F. Supp. 3d 274, 282 (S.D.N.Y. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). Individuals in civil detention, like Ruddock is here, "deserve at least as much protection as those who are criminally incarcerated." *Charles v. Orange Cnty.*, 925 F.3d 73, 82 (2d Cir. 2019) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982)). The Fifth Amendment's due process clause protects federal

6

civil detainees' rights to be free from deliberate indifference while in custody. *See Jones v. Wolf*, 20-CV-361, 2020 WL 1643857, at *2-*3 (W.D.N.Y. Apr. 2, 2020).

To establish a substantive due process violation, a petitioner must show that the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *City of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Deliberately indifferent conduct towards the medical needs of detainees supports a substantive due process claim. *See Lewis*, 523 U.S. at 849-50; *Charles*, 925 F.3d at 86.

A petitioner alleging deliberate indifference based on unconstitutional conditions of confinement must demonstrate that the official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the . . . detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Vides v. Wolf*, 6:20-CV-06293 EAW, 2020 WL 3969368, at *10 (W.D.N.Y. July 14, 2020) (quoting *Coronel*, 449 F. Supp. 3d at 284); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

To prevail on a deliberate indifference claim based on medical needs, a petitioner must show a "serious medical need," and that the government "acted with deliberate indifference to such need[]." *Halladene v. Decker*, 20 Civ. 2883 (GBD), 2020 WL 2133057, at *4 (S.D.N.Y. May 5, 2020) (quoting *Charles*, 925 F.3d at 86). The first prong "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway v.*

*Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). And the second prong requires a petitioner to show that the officials "knew that failing to provide the complained of medical treatment would pose a substantial risk to [his] health or that [the officials] should have known that failing to provide the omitted medical treatment would pose a substantial risk to [his] health." *Halladene*, 2020 WL 2133057, at *4 (quoting *Charles*, 925 F.3d at 87).

*Jones v. Wolf*, 20-CV-361, 2020 WL 1643857 (W.D.N.Y. Apr. 2, 2020), and subsequent decisions provide a framework for conditions-of-confinement challenges based on deliberate indifference to the risk of COVID-19 exposure at BFDF. In *Jones*, Judge Vilardo addressed BFDF detainees' claims that continued detention during the COVID-19 pandemic violated their substantive rights under the Fifth Amendment's due process clause. *Id.* at *2-3 (evaluating detainees' claim as an amalgam of two theories of substantive due process violations: unconstitutional conditions of confinement and deliberate indifference to serious medical needs). He concluded that petitioners who qualified as vulnerable individuals under the CDC's definition demonstrated irreparable harm and were likely to succeed on the merits of their claim that the respondents acted with deliberate indifference to unreasonably unsafe conditions at BFDF and to those petitioners' medical needs. *Id.* at *12-13. He held that the respondents could "rectify the ongoing violation by

8

providing those petitioners who meet the CDC's definition of vulnerable individuals with a living situation that facilitates 'social distancing.'" *Id.* at *14.[3]

Courts in this circuit, including in the *Jones-Ramsundar* cases, have found that immigration detainees who suffer from medical conditions that put them at high risk if infected with COVID-19 have serious medical needs for purposes of the deliberate indifference analysis. *See Vides*, 2020 WL 3969368, at *10 (collecting cases).

## II. NO SUBSTANTIVE DUE PROCESS VIOLATION EXISTS HERE

### A. Ruddock's COVID-related Claims

Ruddock claims that Respondents violated, and continue to violate, his substantive due process rights by failing to protect him from the risk of COVID-19 and failing to provide him adequate treatment for COVID-19.

A court in this district already considered—and denied—Ruddock's COVID-related substantive due process claim. *See Ruddock v. Wolf*, No. 20-CV-549, 2020

---

[3] Judge Vilardo later issued a temporary restraining order regarding certain identified vulnerable petitioners who had not been placed in single-occupancy cells. *See generally Ramsundar v. Wolf*, 20-CV-402, 20-CV-361, 2020 WL 1809677 (W.D.N.Y. Apr. 9, 2020). He ordered release of those vulnerable petitioners who remained in dormitory settings, unless the respondents implemented the following protective measures: (1) placement in single-occupancy cells; (2) accommodation to eat meals in those cells and to bathe and shower in isolation; (3) provision, without charge, of sufficient shower disinfectant, masks, and ample soap; and (4) requiring all BFDF staff and officers to wear masks when interacting with these petitioners. *Id.* at *5-6. He converted the TRO to a preliminary injunction on April 27, 2020. *See Ramsundar v. Wolf*, 20-CV-361, 20-CV-402, 2020 WL 1986923, at *3 (W.D.N.Y. Apr. 27, 2020).

WL 2839345, at *2 (W.D.N.Y. June 1, 2020) (concluding that "based on [the] . . . decisions in *Jones* and *Ramsundar*, the respondents have not violated Ruddock's right to Due Process," and that "the respondents have not been deliberately indifferent to Ruddock's serious medical needs in providing him care for COVID-19"). That court concluded that Ruddock was not a "vulnerable individual" under *Jones* and *Ramsundar*.[4] *See id.* at *1. It reached that conclusion knowing Ruddock's complaints that he experienced shortness of breath and coughed blood, and that Ruddock was diagnosed with COVID-19. *See id.* at *1-*2.

Ruddock moved that court to reconsider its decision denying his petition.[5] *See Ruddock v. Wolf*, No. 20-cv-594 (W.D.N.Y.), at Dkt. 15. That court denied his request, explaining that Ruddock did not "point to any 'matters . . . that might reasonably be expected to alter the conclusion reached by the [C]ourt.'" *See id.* at Dkt. 18 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Significantly, Ruddock filed a declaration in support of his motion for reconsideration that is almost identical to the one he filed in support of his claims here. *See id.* at Dkt. 15 (citing pneumonia, acute respiratory disease, cleaning regimen, access to hygiene items and protective equipment, availability of group activities, and claimed coughing of blood). Ruddock adds a new COVID-related allegation here—that he presented with complaints of a cough at sick call on July

---

[4] Because Ruddock's COVID-19 claims fail under the *Jones-Ramsundar* cases, this Court need not decide whether a more stringent standard may apply.

[5] Ruddock appealed the dismissal of his petition in that case. *See Ruddock*, No. 20-cv-549 (W.D.N.Y.), at Dkt. 16.

22, 2020. *See* Dkt. 12, at 5. This allegation is substantially similar to those presented in his earlier petition, and the Court reaches the same conclusion here.

Based upon the facts and circumstances presented, Ruddock is not a vulnerable individual, and Respondents showed deliberate indifference neither to his risk of contracting COVID-19 nor in treating him for COVID-19. Ruddock did not demonstrate the likelihood of success or irreparable harm required to obtain a preliminary injunction or a temporary restraining order based his on COVID-19 substantive due process claims.[6]

### B. Ruddock's Dental Treatment Claim

Ruddock also claims that Respondents violated, and continue to violate, his substantive due process rights by failing to provide him with adequate dental treatment. Respondents claim that Ruddock sought and received medical attention for dental pain five times in the course of one month. *See* Dkt. 10-1 ¶¶41-45. Ruddock does not contest that claim. *See* Dkt. 12, at 10 ¶¶ 29-30. He bases his

---

[6] Courts apply a higher standard "if the requested injunction is 'mandatory,' altering rather than maintaining the status quo, or if the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if defendant prevails at a trial on the merits." *People for Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 303 (S.D.N.Y. 2000), *adopted*, No. 00 CIV. 3972 (VM), 2000 WL 1639423 (S.D.N.Y. Oct. 31, 2000), *aff'd*, 18 F. App'x 35 (2d Cir. 2001); *see also Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (noting that courts grant mandatory injunctions "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief" (internal quotations and citation omitted)). Because Ruddock does not prevail under the traditional standard, he also does not prevail under the heightened standard.

11

claim on Respondents' failure to provide the treatment (a root canal) that he preferred instead of the treatment they recommended (extraction). *See id.* at 10 ¶¶ 29-33.

In light of the numerous dental interventions Ruddock received, which he does not dispute, Ruddock cannot establish that Respondents "acted with deliberate indifference" to his dental needs. *See Charles*, 925 F.3d at 86. Ruddock has a "right . . . to medical care—not the type or scope of medical care which he personally desires[;] [a] difference of opinion between a physician and a patient does not give rise to a constitutional right . . . ." *See United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867-68 (2d Cir. 1970) (quoting *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)), *overruled on other grounds, Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Accepting as true Ruddock's claim that a root canal is possible but Respondents will not perform the procedure because of its cost, his allegations do not establish a deliberate indifference claim on these facts.

Ruddock may not maintain a deliberate indifference substantive due process claim based on Respondents' failure to provide him with his preferred dental treatment. Because he did not demonstrate that he is likely to succeed on that claim, the Court denies Ruddock's request for a temporary restraining order or a preliminary injunction on that basis.

## CONCLUSION

For the above reasons, the Court DENIES Ruddock's motion for a temporary restraining order and preliminary injunction (Dkt. 2). The Court reserves decision on Ruddock's remaining claims, which it will address in a separate decision and order.

Dated:   October 9, 2020
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE